# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GOVERNMENT BENEFITS ANALYSTS, INC.,
et al.,

       Plaintiffs,

v.                                          Civil Action No. 10-2558-KHV-DJW

GRADIENT INSURANCE BROKERAGE, INC.,
et al.,

       Defendants/Third Party Plaintiffs,

v.

GALEN JONES,
et al.,

       Third Party Defendants.

## Memorandum and Order

Pending before the Court is Plaintiffs' Motion to Compel (ECF No. 93). Plaintiffs seek an order from the Court compelling Defendants to provide complete answers to Interrogatories Nos. 5, 7, 8, 13–15, 17–20, 22, and 25. Plaintiffs also seek complete responses to Requests for Production Nos. 6, 17, and 31. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## I.    Background

On October 14, 2010, Plaintiffs initiated this action to recover more than $3 million for Defendants' allegedly unlawful use of Plaintiffs' intellectual property, trademarks, and proprietary marketing system. Between 2001 and 2005, Plaintiffs purportedly developed a training and marketing system designed to teach insurance agents how to help clients qualify for enhanced

benefits under a relatively unknown Veterans Affairs Benefit Rule, among other things.[1]  In 2007, Plaintiffs allegedly entered into a non-exclusive, oral agreement with Defendants, giving Defendants a limited license to use Plaintiffs' system, trademark, and business name.  Plaintiffs assert that, as compensation for the limited license, they were to receive seminar fees and commissions for sales from insurance agents they trained.[2]  Plaintiffs further assert that "[t]he parties agreed the limited license would terminate if either party terminated the agreement, and [Defendants] could no longer use the system, mark, or business name."[3]  According to Plaintiffs, while the agreement was lucrative for both sides, Defendants terminated the relationship to keep all of the profits for themselves.  Contrary to the alleged terms of the agreement, Defendants purportedly continued using Plaintiffs' training and marketing system after terminating the relationship.  Plaintiffs allege that Defendants' continued  use was done without consent from, or payment to, Plaintiffs.

Defendants, on the other hand, assert that they retained Plaintiffs' services to help "recruit additional agents to [their] sales force by building and implementing . . . [an] educational and marketing program revolving around the pension benefits available to U.S. military veterans through the Department of Veterans Affairs."[4]  Like Plaintiffs, Defendants assert that this relationship was lucrative for awhile.[5]  In August 2010, however, Defendants terminated the agreement between the parties because Plaintiffs allegedly misappropriated Defendants' trade secrets as part of a conspiracy

---

[1]Pls.' Mem. Supp. Mot. Compel (ECF No. 94) at 2.

[2]*Id.*

[3]*Id.*

[4]Defs.' Mem. Opp'n Mot. Compel (ECF No. 113) at 1.

[5]Defs.' Answer to Second Am. Compl. & Restated Countercl. (ECF. No. 60) at 25, ¶ 49.

to actively solicit Defendants' agents and move them to Defendants' competition.[6]

The instant motion arises out of Defendants' responses to Plaintiffs' interrogatories and requests for production of documents.  Plaintiffs present six questions for the Court to consider: (1) whether Defendants must produce copies of insurance policies; (2) whether Defendants must specify the trade secrets alleged in their counterclaim; (3) whether Defendants must disclose the names of witnesses who will support the specific allegation in paragraph 55 of their counterclaim; (4) whether Defendants must disclose evidence relevant to the reasons for which they terminated the relationship; (5) whether Defendants must produce documents and information showing revenue and expenses attributable to VA marketing programs; and (6) whether Defendants must identify documents in order to utilize Rule 33(d).

## II.     Analysis

### A.     Insurance Policies

Plaintiffs' Request for Production No. 31 seeks copies of insurance policies that provide coverage for advertising, trademark, and copyright injuries, among other things.  Specifically, Plaintiffs request:

> All policies of insurance (including any riders and endorsements) of the [Defendant] Parties that identify any one or more of the following covered items: Advertising injury; personal or advertising injury; infringement of trademark, trade name, trade dress; use or misappropriation of advertising or advertising ideas or style of doing business; infringement of copyright, title, or slogan; piracy; unfair competition; web site content; insurance agents' errors or omissions or professional liability.[7]

Defendants objected to the request, stating that the request exceeded their obligation under the

---

[6]*Id.* at 2.

[7]Defs.' Resps. Pls.' First Reqs. Produc. (ECF No. 94-3) at 14 (punctuation corrected to make the Request more readable).

Federal Rules of Civil Procedure.[8]  Subject to this objection, Defendants also stated that they do not possess any such insurance policies.[9]

In support of their motion, Plaintiffs contend that Defendants admit to having a Commercial General Liability policy, and should therefore be required to produce the policy.[10]  Defendants state that they conducted their own review of their existing insurance agreements, and determined that none of their insurance agreements provide the coverage described in Request No. 31.[11]  Plaintiffs seek copies of the insurance agreements to make their own determinations regarding coverage.[12]  According to Defendants, however, Plaintiffs are mistaken as to the obligation created by Fed. R. Civ. P. 26(a)(1)(A)(iv).  Defendants' contend that "Rule 26(a)(1)(A)(iv) certainly does not contemplate such a broad disclosure obligation."[13]  The issue for the Court, then, is the scope of a party's obligation to produce insurance agreements pursuant to Rule 26(a)(1)(A)(iv) and whether Defendants have fulfilled that obligation.

Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires that a party produce copies of "*any* insurance agreement under which an insurance business *may* be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the

---

[8]*Id.*

[9]*Id.*

[10]Pls.' Mem. Supp. Mot. Compel at 6.

[11]Defs.' Mem. Opp'n Mot. Compel at 4–5.

[12]Pls.' Mem. Supp. Mot. Compel at 6.

[13]Defs.' Mem. Opp'n Mot. Compel at 5.

judgment."[14]  Under this rule, a party is obligated to such make insurance agreements available as part of its initial disclosures.  Thus, the opposing party need not make any request at all.  Moreover, "[t]he rule is absolute . . . and does not require any showing of relevance."[15]  The Advisory Committee Notes to Rule 26 further state that the Rule "resolves the issue in favor of disclosure" because "[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation."[16]

Based on its review of the parties' arguments and the relevant case law, the Court finds Defendants' argument unpersuasive.  Rule 26(a)(1)(A)(iv) and the Advisory Committee Notes following it make it clear that the Rule is to be interpreted broadly, with an emphasis on disclosure.  Under this interpretation, the phrase 'may be liable' is crucial.  The Rule does not require that the insurer in fact be liable to satisfy any part of the judgment or to indemnify for payments made in satisfaction of the judgment.  The Rule only requires that the insurer *may* be liable.  Defendants' argument therefore runs contrary to Rule 26(a)(1)(A)(iv) and its stated purpose.  Plaintiffs are entitled to review Defendants' insurance agreements in order to make their own determination regarding Defendants' coverage.  The Court is not prepared to let Defendants make the assertion that their insurance agreements provide "no coverage for this litigation," and then refuse to produce information to support their assertions.  The Court therefore overrules Defendants' objection and

---

[14]Fed. R. Civ. P. 26(a)(1)(A)(iv) (emphasis added).

[15]*United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007)(citation omitted).

[16]Fed. R. Civ. P. 26(a)(1)(A)(iv) advisory committee's note (1970 Amendment).

*grants* Plaintiffs' motion to compel as to Request No. 31. Defendants shall produce copies of all insurance agreements *no later than 15 days from the date of this order*.

### B.    Trade Secrets

In their counterclaim against Plaintiffs, Defendants allege that Plaintiffs misappropriated trade secrets. According to Defendants, Plaintiffs learned trade secrets regarding certain aspects of Defendants' field marketing organization ("FMO"),[17] and later breached the exclusive nature of the parties' agreement by using the alleged trade secrets to recruit Defendants' clients to another FMO.[18] Plaintiffs' First Interrogatory No. 13 seeks a description of "all information, materials, concepts, or ideas claimed by [Defendants] to be 'trade secrets' . . . as alleged in [Defendants'] Answer and Counterclaim."[19] In their amended response to the interrogatory, Defendants assert that the question is objectionable to the extent it calls for legal conclusions. Subject to this objection, Defendants assert that "[s]uch trade secrets include, without limitation, the following:"

(i)    *any* lists, compilations, databases, and notes that include information regarding the insurance producers contracted to write insurance products with [Defendants] or from which such information can be derived;

(ii)    *any* specific information regarding the insurance producers contracted to write insurance products with [Defendants] that was set forth in and/or derived from the aforementioned lists, compilations, databases or notes and that is not generally known or readily ascertainable by persons in the insurance industry;

(iii)    information regarding the formulation, compilation, and branding for

---

[17]Defendants describe a field marketing organization as an organization that distributes and markets insurance products through a nation-wide network of financial professionals and insurance producers. Plaintiffs describe a field marketing organization as a contracted sales force for insurance carriers, where the carriers contract with the FMO which in turn contracts with independent insurance agents to sell products for the carriers.

[18]Defs.' Answer to Second Am. Compl. & Restated Countercl. at 20–21, ¶ 25–32.

[19]Defs.' Am. Resps. Pls.' First Set Interrogs. (ECF No. 94-7) at 2.

> [Defendants'] various marketing programs;
>
> (iv)    specific details regarding [Defendants'] operational infrastructure, which was
>         and is unique in the FMO industry.[20]

Defendants conclude their amended response to Interrogatory No. 13 stating "[t]he full extent of the trade secrets acquired by Plaintiffs and Third Party Defendant Galen Jones is unclear at this time, but discovery is ongoing."[21]   Defendants contend that their amended answer is responsive to Interrogatory No. 13, and therefore Plaintiffs' motion to compel is now moot to the extent it seeks the information requested by Interrogatory No. 13.[22]

Federal Rule of Civil Procedure 33 governs interrogatories.  The rule states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)."[23]  Importantly, the Rule was amended in 1970 to provide that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."[24] This Court has followed the 1970 amendment, noting that "[contention] interrogatories are helpful in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense."[25]

In addition to permitting contention interrogatories, Rule 33 also requires that "[e]ach

---

[20]*Id.* at 2–3.

[21]*Id.* at 3.

[22]Defs.' Mem. Opp'n Mot. Compel at 5–7.

[23]Fed. R. Civ. P. 33(a)(2).

[24]*Id.*

[25]*Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) (citing *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM-DJW, 2005 WL 375667, at *5 (D. Kan. Feb. 3, 2005) (citation omitted)).

interrogatory must, to the extent it is not objected to, be answered ***separately and fully*** in writing under oath."[26]   The Rule was amended in 1993 to "emphasize the duty of the responding party to provide ***full*** answers to the extent not objectionable."[27]   In the context of interrogatories seeking disclosure of trade secrets allegedly misappropriated, where parties have provided answers containing "numerous generalities which do not provide sufficient specificity concerning the 'trade secrets,'" the court has compelled parties to set forth the trade secrets *in specific detail*.[28]   Vague terms, and other inadequate descriptions of trade secrets, referring to such things as "proprietary processes" and "industry product knowledge" are insufficient to meet a party's obligation to provide a full answer under Rule 33(b)(3).[29]   Additionally, whether or not a party has sought to have its answers treated as "confidential" or "attorneys-eyes only" may be instructive as to whether the party has provided sufficient specificity in its response.[30]

The Court begins by overruling Defendants' objection to Interrogatory No. 13 as calling for legal conclusions.  Fed. R. Civ. P. 33(a)(2) clearly states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."[31]   To the extent that it calls for application of law to the facts of this case, Plaintiffs'

---

[26]Fed. R. Civ. P. 33(b)(3) (emphasis added).

[27]*Id.* advisory committee's note (1993 Amendment) (emphasis added).

[28]*Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *4 (D. Kan. Mar. 7, 2008) (emphasis added).

[29]*See id.* at *4 & n.10.

[30]*See id.*

[31]Fed. R. Civ. P. 33(a)(2).

Interrogatory No. 13 is within the bounds of Rule 33.  Defendants' objection is therefore overruled.

Turning now to Defendants' amended response to Interrogatory No. 13, the Court finds that it lacks sufficient specificity regarding the trade secrets allegedly misappropriated.  Defendants repeatedly assert that they severed the relationship in order to protect against further misappropriation of trade secrets by Plaintiffs.[32]  Plaintiffs are entitled to information regarding the purported trade secrets allegedly misappropriated, and sought to obtain such information through Interrogatory No. 13.  Defendants' answer in its amended response does little, if anything, to go beyond recitation of the definition of "trade secrets" under K.S.A. § 60-3320, which defines "trade secrets" as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[33]

Defendants' responses (i)–(iv) provide no more than mere generalities regarding the trade secrets at issue.  Rather, Defendants describe the alleged trade secrets as "*any* lists . . .," "*any* specific information . . .," "*information regarding formulation* . . .," and "*specific details* . . . ."  This, however, is the extent of the answer.  Defendants provide neither the lists, the specific information, the information regarding formulation, nor the specific details.  Nor do Defendants seek to have their answers treated as "Confidential Information" pursuant to the protective order in this case.

In light of Defendants' failure to provide the information sought with sufficient specificity,

---

[32]Defs.' Answer to Second Am. Compl. & Restated Countercl. at 21, 27, ¶ 31, 61, 64; *see id.* Count I at 30–32, ¶ 83-95.

[33]K.S.A. § 60-3320(4)(i)–(ii).

the Court **grants** Plaintiffs' motion to compel as to Interrogatory No. 13.  Defendants **shall** provide

a full answer to Interrogatory No. 13 stating in specific detail the trade secrets allegedly

misappropriated **no later than 15 days from the date of this order**.

### C.    Witnesses

Plaintiffs' Interrogatory No. 18 requests that Defendants "describe the basis of [their]

contention that 'a . . . Producer would be required to cancel his contracts with [Defendants] and enter

into similar contracts with a competing FMO, which was already selected by Mr. Jones,' as alleged

in paragraph 55 of [Defendants'] Answer and Counterclaim."[34]  Defendants respond as follows:

> Defendants object to this Request, as it seeks information in [Plaintiffs'] possession,
> custody, or control . . . .  Subject to and without waiving the foregoing objections,
> Defendants' attorneys have interviewed witnesses who will testify to the truth of this
> statement.  Furthermore, see Defendants' document production, which includes
> documents containing information responsive to this Request.  Defendants object to
> the request that Defendants summarize such documents, which speak for
> themselves.[35]

Based on this response, Plaintiffs' seek an order compelling Defendants to disclose the names of the

witnesses interviewed who will support the specific allegations in paragraph 55 of Defendants'

counterclaim.  In support of their request, Plaintiffs argue that Fed. R. Civ. P. 26 and prior case law

prohibit Defendants from withholding the names of such witnesses.

Defendants object to Plaintiffs' request on the grounds that they have already provided the

information sought by Interrogatory No. 18.[36]  Defendants further object to Plaintiffs' request as

improper.  Defendants contend that Plaintiffs have effectively re-written the existing interrogatory

---

[34]Defs.' Resps. Pls.' First Set Interrogs. (ECF No. 94-4) at 13.

[35]*Id.*

[36]Defs.' Mem. Opp'n Mot. Compel at 7.

in an effort to support their motion to compel.[37]   In particular, Defendants argue that Interrogatory

No. 18 does not, despite Plaintiffs' contentions, seek the names of witnesses who will testify in

support of Defendants' allegation in paragraph 55 of their counterclaim.

> Federal Rule of Civil Procedure 26 provides that
>
> a party must, without awaiting a discovery request, provide to the other parties the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.[38]

"The initial disclosure obligation . . . has been narrowed to identification of witnesses and documents

that the disclosing party may use to support its claims or defenses.  'Use' includes any use at a

pretrial conference, to support a motion, or at trial."[39]   Nowhere, though, does the Rule state that a

party must disclose a list containing the party's determinations regarding which interviewed

witnesses support each claim or defense.

In support of their request, Plaintiffs cite *Thompson v. Jiffy Lube International, Inc.*[40]   In

*Thomspon*, the defendant moved for an order compelling the plaintiffs to produce, among other

things, the names and addresses for persons with relevant information concerning their allegations.[41]

The plaintiffs objected on the grounds that (1) they had promised certain witnesses confidentiality

---

[37]*Id.* at 7–8.

[38]Fed. R. Civ. P. 26(a)(1)(A)(i).

[39]*Id.* advisory committee's note (2000 Amendment).

[40]*Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2006 WL 2037395, at *1 (D. Kan. July 18, 2006).

[41]*Id.* at *2.

and (2) they were only required to disclose the names of witnesses they planned to use at trial.[42]  The court rejected both arguments, finding that there was "no evidence that [the] plaintiffs [had] disclosed all witnesses with knowledge of the facts relevant to [the] case"[43] consistent with the plaintiffs' Rule 26 obligation.  The court therefore held that the defendant's interrogatories were not seeking counsel's work product, but instead were seeking only to determine whether factual witnesses existed.[44]  The court therefore granted the defendant's motion to compel.

Despite Plaintiffs' attempts to analogize their situation to that in *Thompson*, the Court finds Defendants' argument persuasive.  Rule 26(a)(1)(A)(i) does not require Defendants to provide a list of every witness they interview and subsequently determine will support a particular defense or counterclaim.  As discussed above, the Rule only requires that Defendants disclose the names and contact information of the witnesses they intend to use.  Defendants maintain that they have done so,[45] and Plaintiffs provide no argument to the contrary.  Nor have Plaintiffs alleged that Defendants failed to provide, as required by Rule 26(a)(1)(A)(i), the subjects of the information each witness is likely to have.  Plaintiffs, instead, focus on Defendants' unwillingness to disclose its determinations regarding which witnesses they think will support one claim or another.  Based on these facts, Plaintiffs' attempts to analogize their case with *Thompson* fail.  Plaintiffs have not shown, nor have they attempted to show, that Defendants refuse to disclose all witnesses likely to have discoverable information that Defendants intend to use.  Rather, Plaintiffs contention is essentially that

---

[42]*Id.*

[43]*Id.* at *3.

[44]*Id.*

[45]*See* Defs.' Mem. Opp'n Mot. Compel at 8, n.9.

Defendants determinations as to which witnesses they will use to support their allegations are discoverable.

With respect to this issue, however, the Court is persuaded by the rationale in *Electronic Data Systems Corp. v. Steingraber*,[46] which is factually more similar to the present case.   In *Electronic Data Sys.*, the court denied the motion to compel because "revealing the identity of witnesses interviewed would permit opposing counsel to infer which witnesses counsel considers important, thus, revealing mental impressions and trial strategy."[47]  This is not to say, however, that such information is never discoverable.   The Court may require that such information be disclosed if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[48]   Here, Plaintiffs have made no such showing.

Based on its review of the parties' arguments and the prior case law, the Court ***denies*** Plaintiffs' motion as to the requested list of interviewed witnesses who will support Defendants' allegation in paragraph 55 of their counterclaim.   Defendants ***shall not*** be compelled to provide a list of witnesses they think support this allegation.   That said, the Court does not deny Plaintiffs' motion as to Interrogatory No. 18 as a whole.   The Court further addresses Interrogatory 18 in section F below.

### D.        Reasons for Termination

---

[46]*Electronic Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653405, at *1 (E.D. Tex. July 9, 2003).

[47]*Id.* (citations omitted).

[48]Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Electronic Data Sys.* at *3 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

According to Plaintiffs, Defendants should be compelled to disclose evidence relevant to the reasons Defendants terminated the relationship.  Specifically at issue are Interrogatories Nos. 14 and 15, and Request for Production 17.  The Court will take up Interrogatory No. 15 first, and later address Interrogatory No. 14 and Request for Production No. 17 together.  Interrogatory No. 15 states:

> Please describe all communications by and/or among any of the [Defendant] Parties regarding a proposed fee for any tax services, including the completion of an IRS Form 709, to be charged to clients or customers of any veterans benefits program.[49]

Defendants responded to Interrogatory No. 15 as follows:

> Defendants object to this Request, as it is premised on the undefined term "veterans benefits program," which is vague, ambiguous, confusing, and requires speculation to determine its meaning.[50]  Defendants further object to this Request, as it demands identification of information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.[51]

In support of their motion, Plaintiffs assert that Defendants' reasons for terminating the parties' business relationship are a central issue in the case.  Plaintiffs contend that Defendants terminated the relationship because they "no longer wanted to share half the profits with [Plaintiffs]."[52]  Plaintiffs assert that Interrogatory No. 15 is both relevant and reasonably calculated to lead to admissible evidence because Plaintiffs refused to agree to a proposed fee that would give

---

[49]Defs.' Resps. Pls.' First Set Interrogs. at 12.

[50]Plaintiffs assert in footnote 1 on page 10 of their Memorandum in Support of the instant motion that the parties have come to an agreement on the definition of the term "veterans benefits program."  Defendants do not contest this in their response memorandum.  The Court therefore declines to consider this portion of Defendants' objection.

[51]Defs.' Resps. Pls.' First Set Interrogs. at 12.

[52]Pls.' Mem. Supp. Mot. Compel at 3.

$350 to Gradient Tax, LLC ("GT") each time they completed an IRS Form 709. While GT is not a party to this action, Plaintiffs allege that Defendants' CEO Tami Lucius demanded the fee in question.[53] Plaintiffs rely on the inference that Defendants terminated, or may have terminated, the relationship because Plaintiffs would not agree to this proposed fee. Plaintiffs further support their request by asserting that, under the normal, broad construction of relevancy applied at this stage of litigation, there is a possibility that the information sought may be relevant to their claim and may lead to the discovery of admissible evidence.

Defendants oppose Plaintiffs' request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants contend that the $350 fee is irrelevant because it was to be paid to Gradient Tax, LLC, which is not a party to this action. Defendants also assert that they hope to avoid a dispute on Interrogatory No. 15 because they have amended their response to Plaintiffs' Request for Production No. 18, which seeks all documents related to the proposed fee for tax services.

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ."[54] Such information, however, "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[55] "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be

_____

[53]*Id.* at 10.

[54]Fed. R. Civ. P. 26(b)(1).

[55]*Id.*

considered relevant if there is *any possibility* the information sought may be relevant to the subject matter of the action."[56]  If there is any possibility that the discovery sought may be relevant, then the burden shifts to the party resisting discovery to

> establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad discovery.[57]

Applying these principles, the Court finds that Plaintiffs' request meets the broad standard of relevancy.  The Court also finds that Defendants have not met their burden to establish the lack of relevance.  The reasons why Defendants terminated the relationship are a central issue in the case, and the alleged conversation regarding the proposed fee for tax services meets the broad standard of relevancy applied at this stage of the litigation.  Communications by and/or among any of the Defendants regarding the proposed fee for tax services are possibly relevant to the reasons why Defendants terminated the relationship, and may be relevant to show that Defendants terminated the relationship because they no longer wanted to share profits with Plaintiffs.

The burden, then, is on Defendants to establish the lack of relevance or that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad discovery.  Defendants, however, fail to do either. Defendants' contention that Gradient Tax is not a party does little to challenge the relevance of the alleged communications by or among the Defendant parties, especially the alleged exchange between Plaintiffs and Ms. Lucius.  Defendants

---

[56]*Continental Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 U.S. Dist. LEXIS 87780, at *7 (D. Kan. Nov. 28, 2007) (citing *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991))(emphasis added); *see also Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (2001) (citations omitted).

[57]*Continental Coal*, 2007 U.S. Dist. LEXIS 87780 at *8–9 (citations omitted).

also fail to allege any potential harm occasioned by the presumption in favor of broad discovery.

Finally, Defendants' reliance on their amended response to the corresponding request for production is insufficient to meet their burden. Defendants state that Interrogatory No. 15 and Request for Production No. 18 are "somewhat duplicative."[58] This response itself, though, defeats what Defendants hope to accomplish by appealing to their amended response to Request for Production No. 18. Simply put, Interrogatory No. 15 and Request for Production No. 18 seek different information. Interrogatory No. 15 doesn't seek just documents; rather, it seeks a description of all *communications* relating to the proposed fee for tax services.

Accordingly, the Court *grants* Plaintiffs' motion as to Interrogatory No. 15. Defendants *shall* provide a full answer to Interrogatory No. 15 describing all communications by and/or among any of Defendants regarding a proposed fee for any tax services, including the completion of an IRS Form 709, to be charged to clients or customers of any veterans benefits program *no later than 15 days from the date of this order*.

Interrogatory No. 14 and Request for Production No. 17 purportedly seek information regarding the reasons for which Defendants terminated the parties' business relationship. Interrogatory No. 14 seeks "all communications by [Defendants] with any assisted living facilities, in-home care providers, or similar businesses, including American Veterans Care Coordinators or Holiday Retirement Communities, related to any veterans benefits programs."[59] Request for Production No. 17 seeks all documents regarding any such discussions, plans, or communications.[60]

---

[58]Defs.' Mem. Opp'n Mot. Compel at 9.

[59]Defs.' Resps. Pls' First Set. Interrogs. at 11.

[60]Defs.' Resps. Pls.' First Set Reqs. Produc. at 10.

Excluding the now-waived objection to the term "veterans benefits program," Defendants object as follows:

> Defendants . . . object to this Request, as it demands identification of information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.[61]

Defendants object to Request for Production No. 17 on the grounds that the request is "overly broad, unduly burdensome, and . . . neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence."[62]

Under the broad standard of relevancy discussed above, the Court finds that both Interrogatory No. 14 and Request for Production No. 17 are facially relevant to Defendants' reasons for terminating the parties' business relationship.  Plaintiffs allege that Defendants may have terminated the relationship because Plaintiffs explored the possibility of using their training and marketing system with independent living facilities.[63]  Plaintiffs provide a good faith argument that determining Defendants' "actual interest level . . . in pursuing independent living facilities" is relevant to determining Defendants' reasons for terminating the relationship.

In light of the Court's finding of relevancy, the burden shifts to Defendants to establish lack of relevance or that the discovery sought is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad discovery. Defendants attempt to establish lack of relevance by arguing that Plaintiffs' characterization of the record is mistaken.  Defendants essentially argue that the discovery sought is not relevant because

---

[61]Defs.' Resps. Pls' First Set. Interrogs. at 11–12.

[62]Defs.' Resps. Pls.' First Set Reqs. Produc. at 10–11.

[63]Pls.' Mem. Supp. Mot. Compel at 11.

Plaintiffs allegations conflict with Defendants' purported reasons for terminating the relationship. The Court, however, is not persuaded by Defendants' arguments. Relevancy does not pertain to only one party's allegations or the other's. Plaintiffs claim, and present a good faith argument, that Defendants may have terminated the relationship because Plaintiffs' efforts to explore the possibility of using their training and marketing system with independent living facilities conflicted with interests Defendants had in doing the same. Plaintiffs explain that information relating to Defendants' interest in pursuing a contract with independent living facilities is necessary to determine whether Defendants' allegations were merely pretext for cutting ties with Plaintiffs.[64] Simply put, Defendants have failed to show how information regarding their pursuit of the same possibilities with independent living facilities is not relevant to their reasons for terminating the parties' relationship.

Accordingly, Defendants' objection to Interrogatory No. 14 and Request for Production No. 17 as irrelevant is overruled. The Court finds that the information sought by both is relevant to the reasons for which Defendants terminated the parties' relationship.

Defendants also object to Request for Production No. 17 on the grounds that it is overly broad and unduly burdensome.[65] Defendants contend that the request would impose an extremely time-consuming and costly burden on them because "[t]he majority of [Defendants'] agents that actively participated in [Defendants'] VA Programs did so by conducting seminars at assisted living

---

[64]Pls.' Reply Mem. Supp. Mot. Compel (ECF No. 126) at 5.

[65]Defendants do not assert that Interrogatory No. 14 is overly broad or unduly burdensome. Pursuant to Fed. R. Civ. P. 33(b)(4), any such objection to Interrogatory No. 14 is waived.

facilities."[66]   Defendants apparently interpret Plaintiffs' request as seeking any document regarding any discussion, plan, or communication *in any capacity*, which would encompass a very broad set of documents.   Although a request of this scope would likely be overbroad and unduly burdensome, the Court finds that this interpretation is not a charitable one.   The Court interprets Plaintiffs' request as seeking only those communications made *by Defendants* and *relating to the possibility of pursuing—i.e., creating, selling, implementing, etc.—VA marketing programs for use by independent living facilities*.   Plaintiffs repeatedly assert that they are interested in Defendants' interest in pursuing independent living facilities.   While Plaintiffs' language may, at times, be imprecise, their intentions are clear: they are seeking documents relating to Defendants' interest in pursuing business relationships with independent living facilities.   Thus, the Court finds that Request For Production No. 17 is neither overbroad nor unduly burdensome.

The Court therefore ***grants*** Plaintiffs' motion to compel as to Interrogatory No. 14 and Request for Production No. 17.   Defendants ***shall*** provide a full answer to Interrogatory No. 14 describing all communications by Defendants with any assisted living facilities, in-home care providers, or similar businesses, including American Veterans Care Coordinators or Holiday Retirement Communities, related to any veterans benefits programs ***no later than 15 days from the date of this order***.   Defendants ***shall*** also produce all documents consistent with the Court's interpretation of Plaintiffs' request regarding any discussions, plans, or communications with any assisted living facilities, in-home care providers, or similar businesses, including American Veterans Care Coordinators or Holiday Retirement Communities, related to any veterans benefits programs ***no later than 15 days from the date of this order***.

---

[66]Defs.' Mem. Opp'n Mot. Compel at 11.

E.      **Revenue and Expenses**

The next group of interrogatories and requests at issue revolve around requests for documents and information showing Defendants' revenue and expenses attributable to VA marketing programs. Plaintiffs assert that Defendants should be compelled to produce the documents and information sought because such documents and information are relevant to prove trademark damages. The discovery requests at issue are as follows:

> Interrogatory No. 7:
> Please state the total net profits, expressed as revenue minus any associated costs, received by any of the [Defendants] attributable to the VA Benefits Maximization Training and Marketing System and/or the "GIB VA Program."[67]
>
> Interrogatory No. 8:
> Please describe by category all costs incurred by [Defendants] attributable to the VA Benefits Maximization Training and Marketing System and/or the "GIB VA Program."[68]
>
> Request for Production No. 6:
> All documents regarding any revenue, profits, expenditures, costs, or financial projections related to any veterans benefits program, including the VA Benefits Maximization Training and Marketing System and the "GIB VA Program."[69]
>
> Interrogatory No. 22:
> Please describe the basis for your contention that one or more of [Defendants] incurred "significant time and expense" in "creating a completely new VA marketing program," as alleged in paragraph 72 of your Answer and Counterclaim, specifying the total time and expense you claim was incurred and describing how the VA marketing program created was "completely new."[70]

---

[67]The terms "VA Benefits Maximization Training and Marketing System" and "GIB VA Program" refer, respectively, to Plaintiffs' and Defendants' purportedly proprietary programs.

[68]Defs.' Resps. Pls.' First Set Interrogs. at 9.

[69]Defs.' Resps. Pls.' Reqs. Produc. at 7–8.

[70]Defs.' Resps. Pls.' First Set Interrogs. at 14.

Defendants object to Interrogatory No. 7 on the grounds that no revenue is attributable to either the VA Benefits maximization Training and Marketing System or the GIB VA Program. Defendants object to Interrogatory No. 8 on the grounds that they incurred no costs attributable to the VA Benefits Maximization Training and Marketing System.  Defendants assert that they have produced or will produce documents containing information related to their costs incurred in relation to the GIB VA Program.  Defendants' objection to Request for Production No. 6 combines their objections to Interrogatories Nos. 7–8.  Lastly, Defendants' response to Interrogatory No. 22 states, "[s]ee Defendants' Responses to Interrogatories 10 through 12."[71]

In support of their motion as to Interrogatories 7–8 and Request for Production No. 6, Plaintiffs assert that "[Defendants clearly] tracked at least the revenue attributable to the VA marketing program, because [they] produced a handful (but not all) of the monthly statements reflecting that very information."[72]  Defendants contest that the monthly statements reflect the revenue attributable to any VA marketing program.  They repeatedly assert that it is *impossible* for them to determine which revenues were directly attributable to VA marketing program(s). Defendants further assert that because of the impossibility of directly attributing revenue to any VA marketing program(s), they were "left to weigh the circumstances each month and subjectively determine what [they] thought to be fair in terms of variable compensation for [Plaintiffs'] role in the GIB VA Program."[73]

Based on its review of the parties' arguments, the Court finds Defendants' argument

---

[71]*Id.*

[72]Pls.' Mem. Supp. Mot. Compel at 12

[73]Defs.' Mem. Opp'n Mot. Compel at 16.

-22-

unpersuasive. Defendants attempt to persuade the Court that it is *impossible* for them to attribute any revenue to any VA marketing program. Defendants' argument is at best self-defeating. Defendants would have the Court believe that they subjectively determined that Plaintiffs earned some $1.3 million over a roughly three-year period,[74] even though Defendants had no way of tracking revenue attributable to Plaintiffs' contributions to Defendants' VA marketing program. The Court is not prepared to accept that Defendants arbitrarily came up with such a large figure for Plaintiffs' compensation without some method for tracking the revenue attributable to Plaintiffs' contributions. The mere fact that Defendants were able to determine what they thought to be *fair compensation* suggests that they employed a particular method or formula to determine the revenue attributable to the VA marketing program. Additionally, Defendants state that "[t]he consulting relationship between [the parties] was profitable for all involved,"[75] which further negates Defendants' claim that it was impossible for them to attribute any revenue to their VA marketing program.

Plaintiffs also contend that during the deposition of Ben Seitz, one of Defendants' employees, Seitz testified that (1) commissions he received were adjusted to account for the cost of any educational or marketing program an agent attended, (2) Defendants assigned a "Veterans Program" code to agent who participated in the VA marketing program, and (3) Defendants would deny agents access to the VA marketing program if they failed to meet minimum production requirements.[76] While it would be somewhat anachronistic to fault Defendants for not addressing this issue in their

---

[74]Defs.' Answer to Second Am. Compl. & Restated Countercl. at 23, ¶ 40.

[75]*Id.* at 25, ¶ 49.

[76]Pls.' Reply Mem. Supp. Mot. Compel at 6–7.

Memorandum in Opposition given that it came before Plaintiffs' Reply, Defendants make no attempt to provide specific information of this sort for their claims. Plaintiffs, on the other hand, have provided numerous specific details in support of their motion to compel on this issue. This weighs heavily in Plaintiffs' favor.

What is perhaps most troubling to the Court is the precedent that would be set by Defendants' positions. If the Court were to adopt Defendants' positions, this would open the door for future litigants to avoid disclosing discoverable information by merely asserting that their method of bookkeeping does not permit them to track revenue. Even worse, Defendants' position may actually encourage poor record keeping as a way to avoid discovery in future lawsuits. The Court is not prepared to set such a precedent. Defendants' alleged failure to employ a system for determining the amount of revenue attributable—whether directly or indirectly, wholly or partially—to any VA marketing program does not entail that it is impossible to make such a determination. Nor does Defendants' alleged failure to employ such a system discharge their obligation to disclose records that would allow Plaintiffs to make their own determination of the amount of revenue attributable to any VA marketing program. Thus, the Court overrules Defendants' objections to Interrogatory No. 7.

Moving now to Interrogatory No. 8, Defendants state that they "object to [Interrogatory No. 8] to the extent it is premised upon the erroneous statement of alleged fact that any of the Defendants incurred costs 'attributable to the VA Benefits Maximization Training and Marketing System.' Defendants have produced and/or will produce documents containing information regarding the costs incurred by Defendants in relation to the GIB VA Program. Defendants object to the request that

Defendants summarize such documents, which speak for themselves."[77]  Defendants reassert their claim that they did not keep good records regarding costs or revenue attributable to each of their various marketing programs.[78]  Defendants further assert that they have produced documents "clearly [outlining] expenses arising out of the GIB VA Program,"[79] and have provided the bates stamp number for those documents.

The Court finds that Defendants have adequately answered Interrogatory No. 8.  Defendants assert that they did not incur any costs attributable to the VA Benefits Maximization Training and Marketing System.  As to costs attributable to the GIB VA Program, Defendants have apparently elected to exercise their Fed. R. Civ. P. 33(d) option to produce business records.  Pursuant to Rule 33(d), a party may produce business records in response to an interrogatory provided that the answer to the interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and the burden of deriving or ascertaining the answer will be substantially the same for either party."[80]  The responding party must, however, "[specify] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[81]  The responding party must also "give the interrogating party a reasonable opportunity to examine and audit the records and to make copies,

---

[77]Defs.' Resps. Pls.' First Set Interrogs. at 9–10.

[78]Defs.' Mem. Opp'n Mot. Compel at 17.

[79]*Id.*

[80]Fed. R. Civ. P. 33(d).

[81]Fed. R. Civ. P. 33(d)(1).

compilations, abstracts, or summaries."[82]  Defendants have produced and identified business records relating to the GIB VA Program.[83]   Plaintiffs have offered no argument that the burden of ascertaining the answer sought by Interrogatory No. 8 is substantially dissimilar, nor have Plaintiffs offered any argument that the documents Defendants produced and identified were in any way deficient.[84]  The Court therefore finds that Defendants have fully answered Interrogatory No. 8.

Accordingly, the Court **grants** Plaintiffs' motion to compel as to Interrogatory No. 7 and **denies** Plaintiffs' motion as to Interrogatory No. 8.   Defendants **shall** produce a full answer to Interrogatory No. 7 stating the total net profits, expressed as revenue minus any associated costs, received by Defendants attributable to the VA Benefits Maximization Training and Marketing System and/or the GIB VA Program **no later than 15 days from the date of this order**.

The Court also **grants** Plaintiff's motion to compel as to Request for Production No. 6,[85] but limits the Request to any information not already produced in response to Interrogatory No. 8. Defendants **shall** therefore produce all documents—not already produced or objected to in response to Interrogatory No. 8—regarding any revenue, profits, expenditures, costs, or financial projections related to any veterans benefits program, including the VA Benefits Maximization Training and

---

[82]Fed. R. Civ. P. 33(d)(2).

[83]Defs.' Mem. Opp'n Mot. Compel at 17.

[84]Despite Defendants' argument specifically challenging Plaintiffs' motion as to Interrogatory No. 8, Plaintiffs fail to address Interrogatory No. 8 in any specific detail in their reply memorandum.

[85]As noted above, Request for Production No. 6 seeks documents corresponding to Interrogatories Nos. 7 and 8.  The Courts' discussion of the parties' arguments for and against Interrogatories Nos. 7 and 8 applies equally to Request for Production No. 6.  Thus, the Court declines to address Request for Production No. 6 separately.

Marketing System, *no later than 15 days from the date of this order*.

Interrogatory No. 22 presents a different question under the same general category of revenue and expenses.  In paragraph 72 of their counterclaim, Defendants assert that they "incurred significant time and expense creating a completely new VA marketing program."[86]  Interrogatory No. 22 asks Defendants to describe the basis for their contention, specifying (1) the total time and expense Defendants claim they incurred and (2) how the purportedly new program was "completely new."  Defendants' only response to the interrogatory is "[s]ee Defendants' Responses to interrogatories 10 through 12."[87]

The Court finds Defendants' answer to Interrogatory No. 22 completely nonresponsive.  As Plaintiffs contend, Defendants merely direct Plaintiffs to responses to other interrogatories.  Even if this were an acceptable response to an interrogatory, which is it not, Defendants' responses to Interrogatories Nos. 10 and 12 do not provide full answers to Interrogatory No. 22.  As discussed above, Rule 33 *requires* that "[e]ach interrogatory must, to the extent it is not objected to, be answered *separately and fully* in writing under oath."[88]  Defendants, however, provided no objection to Interrogatory No. 22.  Accordingly, Defendants are required to provide a separate and full answer to the interrogatory.  Defendants' response, however, was neither separate nor full.

The Court therefore *grants* Plaintiffs' motion to compel as to Interrogatory No. 22.  Defendants *shall* provide a separate and full answer to Interrogatory No. 22 describing the basis for their contention that they incurred "significant time and expense" in "creating a completely new VA

---

[86]Defs.' Answer to Second Am. Compl. & Restated Countercl. at 28, ¶ 72.

[87]Defs.' Resps. Pls.' First Set Interrogs. at 14.

[88]Fed. R. Civ. P. 33(b)(3) (emphasis added).

marketing program."  Defendants answer ***shall*** specify the total time and expense they claim they incurred, as well as how the marketing program created was "completely new."  Defendants ***shall*** provide their response ***no later than 15 days from the date of this order***.

###  F.     Rule 33(d) – Option to Produce Business Records

The final issue Plaintiffs present is whether Defendants' responses to Interrogatories Nos. 5, 17–20, and 25 meet Defendants' obligations under Fed. R. Civ. P. 33(d).  It is not necessary for the Court to take up each interrogatory at length.  Rather, Plaintiffs' motion as to this group of interrogatories involves essentially the same response by Defendants to each individual interrogatory in question.

Before addressing the Rule 33(d) issues, the Court overrules Defendants' objections that Interrogatories Nos. 5, 20, and 25 call for legal conclusions.  As discussed above, Rule 33(a)(2) is clear on this issue, stating that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."[89]  The same analysis applies to Interrogatories Nos. 5, 20, and 25 as applies to Interrogatory No. 13.  That the interrogatories in question call for application of law to the facts of this case does not make them objectionable.

Turning now to the Rule 33(d) issues, Defendants respond to Interrogatories Nos. 5, 17–20, and 25 by directing Plaintiffs to see either Defendants' document production or Defendants' responses to other interrogatories.  Plaintiffs argue that the law does not permit Defendants to answer interrogatories by generally referring to previously produced documents.  In support of their

---

[89]Fed. R. Civ. P. 33(a)(2).

argument, Plaintiffs cite *Williams v. Sprint/United Management Co.*,[90] *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*,[91] and *Oleson v. Kmart Corp.*[92]   Defendants attempt to distinguish their responses from the responses at issue in each of the three cases cited. For the reasons set forth below, Defendants attempts to distinguish their responses fail.  Defendants have therefore not met their burden under Rule 33(d)(1).

Rule 33(d) gives parties responding to interrogatories the option to answer the interrogatory by producing business records.  Pursuant to Rule 33(d), a party may produce business records in response to an interrogatory provided that the answer to the interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and the burden of deriving or ascertaining the answer will be substantially the same for either party."[93]  The responding party is, however, required to "[specify] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[94]  The responding party must also "give the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."[95]

The law is well settled that a responding party electing to exercise its option under Rule 33(d)

---

[90]*Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494 (D. Kan. 2006).

[91]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 756631, at *1 (D. Kan. Mar. 8, 2007).

[92]*Oleson v. Kmart Corp.*, 175 F.R.D. 560 (D. Kan. 1997).

[93]Fed. R. Civ. P. 33(d).

[94]Fed. R. Civ. P. 33(d)(1).

[95]Fed. R. Civ. P. 33(d)(2).

must specify in sufficient detail the records that must be reviewed.[96]   When responding to interrogatories, "generic references to prior disclosures [a party] may have made falls far short of providing the detail required by this subsection."[97]   "The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them."[98]   Rather, a party opting to produce business records under Rule 33(d) "must indicate **with specificity** where the information can be found."[99]   "If the party cannot comply with these requirements, it must otherwise answer the interrogatory fully and completely."[100]

After reviewing Defendants responses to Interrogatories Nos. 5, 17–20, and 25, the Court finds that Defendants have not complied with their Rule 33(d) obligation to specify in sufficient detail the documents that must be reviewed.  Rather, Defendants have made mere generic references to prior disclosures, which total some 13,000 documents.  Defendants' responses therefore fall short of providing the detail required by Rule 33(d).  Defendants assert that their responses are not covered

---

[96]*See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *1 (D. Kan. Mar. 29, 2012); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 756631, at *1 (D. Kan. Mar. 8, 2007); *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494 (D. Kan. 2006); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D. Kan. 2004); *Oleson v. Kmart Corp.*, 175 F.R.D. 560 (D. Kan. 1997).

[97]*Eby Const. Co.*, 2012 WL 1080801 at *5 (citing *Heartland*, 2007 WL 756631 at n.8).

[98]*Oleson*, 175 F.R.D. at 564 (citations omitted).

[99]*Williams*, 235 F.R.D. at 501; *see also Oleson* 175 F.R.D. at 564.

[100]*Oleson*, 175 F.R.D. at 564 (citations omitted).

-30-

by Rule 33(d) because they "all contain substantive written responses to the interrogatories."[101]  The Court is unpersuaded by Defendants assertions.  A party opting to produce documents pursuant to Rule 33(d) is obligated to specify with sufficient detail the documents to be reviewed.  The Rule does not contain a caveat discharging parties of their duty simply because they provide other objections or partial written responses, as Defendants have done here.  If Defendants intend to exercise their Rule 33(d) option to produce business records as satisfaction of their Rule 33(b)(3) obligation to provide a separate and full answer to each interrogatory, they must specify with sufficient detail the records to be reviewed.  If Defendants cannot comply with these requirements, they must otherwise answer the interrogatory *fully and completely*.[102]

In their memorandum in opposition to Plaintiffs' motion, Defendants proffer a second argument against an order compelling them to specifically identify each document that may be responsive to the requests.  Defendants argue that Plaintiffs' requests are unduly burdensome. Except as to Interrogatory No. 17, the undue burden argument was not proffered in response to any of the interrogatories in question.  Because Defendants did not preserve this objection as to Interrogatories Nos. 5, 18–20, and 25, Defendants have waived this objection.  Accordingly, they may not now assert an undue burden as to those interrogatories.  With respect to Interrogatory No. 17, the Court agrees that it is overly broad and unduly burdensome on its face.  The interrogatory requests *all communications* by any of Defendants.  The general rule in this District is that "[a] court will generally find [interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations. Interrogatories may, however,

---

[101]Defs.' Mem. Opp'n. Mot. Compel at 18.

[102]*Oleson*, 175 F.R.D. at 564 (emphasis added).

properly ask for the 'principal or material facts' that support an allegation or defense."[103]  Rather than

excuse Defendants from answering Interrogatory No. 17, the Court will modify the interrogatory so

that it complies with the general rule of this District as set out in *Allianz*.[104]  Defendants are directed

to answer Interrogatory No. 17 by replacing the word "all" with the phrase "principal and

material."[105]  This modification adequately provides the information Plaintiffs seek without overly

burdening Defendants.[106]

Based on the foregoing discussion, the Court orders Defendants to supplement their

responses to Interrogatories Nos. 5, 17–20, and 25 by specifically identifying each document that

may be responsive to the requests.  Defendants' obligation to supplement Interrogatory No. 17 is

subject to the limitation discussed above.  In so ordering, the Court overrules Defendants' objections

to Interrogatories Nos. 5, 17–20, and 25.  In light of the Court's modification of Interrogatory No.

17, Defendants' objections that it is overbroad and unduly burdensome are overruled.  The Court

also denies Defendants' request that they only be required to supplement responses with respect to

the paper documents.  Defendants are better situated to determine what documents, *including emails*

are responsive to Plaintiffs' interrogatories.

The Court next turns to the award of reasonable attorneys' fees and expenses that Plaintiffs'

counsel have incurred in connection with this motion.  Under Rule 37(a)(5)(A), the award of fees

---

[103]*Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *9 (D. Kan. Jan. 7, 2005).

[104]*Heartland*, 2007 WL 756631 at *7.

[105]*Id.*

[106]*Id.*

and expenses is mandatory, unless certain exceptions apply.  The Rule provides in pertinent part: "If the motion [to compel discovery] is granted . . . the court *must,* after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the (i) the movant filed the motion before attempting in good faith to obtain the discovery without court action, (ii) the opposing party's responses or objections were substantially justified, or (iii) other circumstances make an award of expenses unjust.[11]

As the Rule expressly provides, the Court may award fees and expenses under Rule 37(a)(5)(A) only after the Court has afforded the parties the "opportunity to be heard."[11]  To satisfy this requirement, the Court directs Defendants  to show cause, in a pleading filed with the Court within **twenty (20) days** of the date of this Order, why Defendants and/or Defendants' attorneys should not be required to pay the reasonable attorneys' fees and expenses Movants incurred in filing the portions of the Motion to Compel that Movant prevailed on.  Movants shall have **eleven (11) days** thereafter to file a response or responses thereto, if they so choose.  In the event the Court determines that attorneys' fees and expenses should be awarded, the Court will issue an order setting forth a schedule for the filing of affidavits reflecting the amount of fees and expenses Movants have incurred, and for the filing of any related briefs.

---

[1]

[1]Fed.R.Civ.P. 37(a)(5)(A) (emphasis added).

[11]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) (citing Fed. R. Civ. P. 37(a)(4) (now numbered Fed. R. Civ P. 37(a)(5)).

III.    **Summary of Rulings**

Based on the facts of this case and the existing law, Plaintiffs' Motion to Compel is granted in part and denied in part as follows:

(1)     The Court ***grants*** Plaintiffs' Motion to Compel as to Defendants' insurance agreements. Defendants ***shall*** produce copies of all insurance agreements ***no later than 15 days from the date of this order***.

(2)     The Court ***grants*** Plaintiffs' Motion to compel as to Interrogatory No. 13. Defendants ***shall*** provide a full answer to Interrogatory No. 13 stating in specific detail the trade secrets allegedly misappropriated ***no later than 15 days from the date of this order.***

(3)     The Court ***denies*** Plaintiffs' Motion to Compel as to the requested list of interviewed witnesses who will testify in support of Defendants' allegation in paragraph 55 of their counterclaim. Defendants ***shall not*** be compelled to provide a list of witnesses they think support this allegation.

(4)     The Court ***grants*** Plaintiffs' Motion to Compel as to Interrogatory No. 15. Defendants ***shall*** provide a full answer to Interrogatory No. 15 describing all communications by and/or among any of Defendants regarding a proposed fee for any tax services, including the completion of an IRS Form

-34-

709, to be charged to clients or customers of any veterans benefits program *no later than 15 days from the date of this order*.

(5)     The Court **grants** Plaintiffs' Motion to Compel as to Interrogatory No. 14 and Request for Production No. 17. Defendants **shall** provide a full answer to Interrogatory No. 14 describing all communications by Defendants with any assisted living facilities, in-home care providers, or similar businesses, including American Veterans Care Coordinators or Holiday Retirement Communities, related to any veterans benefits programs *no later than 15 days from the date of this order*.   Defendants **shall** also produce all documents consistent with the Court's interpretation of Plaintiffs' request regarding any discussions, plans, or communications with any assisted living facilities, in-home care providers, or similar businesses, including American Veterans Care Coordinators or Holiday Retirement Communities, related to any veterans benefits programs *no later than 15 days from the date of this order*.

(6)     The Court **grants** Plaintiffs' Motion to Compel as to Interrogatory No. 7 and Request for Production No. 6. Defendants **shall** provide a full answer to Interrogatory No. 7

stating the total net profits, as requested, *no later than 15 days from the date of this order*.  Defendants **shall** also produce all documents—not already produced or objected to in response to Interrogatory No. 8—regarding any revenue, profits, expenditures, costs, or financial projections related to any veterans benefits program *no later than 15 days from the date of this order*.

(7)     The Court **denies** Plaintiffs' Motion to Compel as to Interrogatory No. 8.

(8)     The Court **grants** Plaintiffs' Motion to Compel as to Interrogatory No. 22.  Defendants **shall** provide a separate and full answer to Interrogatory No. 22 describing the basis for their contention that they incurred "significant time and expense" in "creating a completely new VA marketing program." Defendants answer **shall** specify the total time and expense they claim they incurred, as well as how the marketing program created was "completely new." Defendants **shall** provide their response *no later than 15 days from the date of this order*.

(9)     The Court **grants** Plaintiffs' Motion to Compel as to Interrogatories Nos. 5, 17–20, and 25.  Defendants **shall** supplement their responses to Interrogatories Nos. 5, 17–20,

-36-

and 25 by specifically identifying each document that may be responsive to the requests *no later than 15 days from the date of this order*. Defendants' obligation to supplement Interrogatory No. 17 is subject to the limitation discussed above.

(10)    The Court *denies* Defendants' request that they only be required to supplement responses with respect to the paper documents. Defendants *shall* supplement Interrogatories Nos. 5, 17–20, and 25 with respect to documents, *including emails*, that are responsive to Plaintiffs' interrogatories *no later than 15 days from the date of this order*.

**IT IS FURTHER ORDERED** that Defendants shall, within **twenty (20) days** of the date of this Order, show cause in a pleading filed with the Court, why Defendants and/or Defendants' attorneys should not be required to pay the reasonable attorneys' fees and expenses Movants have incurred in filing the portions of the Motions to Compel that they prevailed on. Movants shall have **eleven (11) days** thereafter to file a response or responses thereto.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (ECF No. 93) is granted in part and denied in part as set forth above.

**IT IS SO ORDERED**.

Dated this 13thday of August, 2012, at Kansas City, Kansas.

s/ David J. Waxse<br>
David J. Waxse

U.S. Magistrate Judge